**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

AMARILLO DIVISION

PETITION FOR A WRIT OF HABEAS CORPUS BY A
<u>PERSON IN STATE CUSTODY</u>

APR - 8

---

TIMOTHY TYLER TITSWORTH          ELLIS I UNIT, HUNTSVILLE, TX.

VS.                              #999078    2:99-cv-61

GARY JOHNSON, DIRECTOR, TDCJ-ID,
RESPONDENT

AND

THE ATTORNEY GENERAL OF
THE STATE OF TEXAS, JOHN CORNYN, ADDITIONAL RESPONDENT

---

## PETITION FOR WRIT OF HABEAS CORPUS
## BY A PERSON IN STATE CUSTODY[1]

---

1. Name and location of Court which entered the judgment of conviction under attack _____
**181st District Court, Randall County, Texas** _____.

2. Date of judgment of conviction **October 29, 1993** _____.

3. Length of Sentence **Death** _____.

---

[1]      This application is in compliance with Rule 2(c) of the Supreme Court Rules
Governing Section 2254 Cases, in that it is based upon the Model Form found in the Appendix to
those rules.

     A memorandum in support of this petition for writ of habeas corpus is being filed
simultaneously and is incorporated herein by reference as if copied and fully set forth at length.

8

4. Nature of offense involved (all counts) **Capital Murder–murder in the course of committing or attempting to commit robbery.**                    .

5. What was your plea?

    A. Not guilty        **X**
    B. Guilty            ___
    C. Nolo contendere   ___

    If you entered a guilty plea to one count or indictment and a not guilty plea to another count or indictment, give details:
    **n/a**                                                                   

                                                                   .

6. Kind of trial: (Check one)

    a.    Jury           **X**
    b.    Judge Only     ___

7. Did you testify at the trial?

    Yes  ___     No   **X**

8. Did you appeal from the judgment of conviction?

    Yes  **X**     No   ___

9. If you did appeal, answer the following:

    a.    Name of the Court  **Texas Court of Criminal Appeals; Austin, Texas**        .

    b.    Result  **affirmed.** *See, Titsworth v. State,* **(Tex.Cr.App. No. 71,804, del.**

          **November 22, 1995) (unpublished).**    .

    c.    Date of Result **November 22, 1995**                              .

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

    Yes  **X**     No ___

11. If your answer to 10 was "yes," give the following information:

    a. (1) Name of Court **Texas Court of Criminal Appeals**                    .

       (2) Nature of Proceeding **State Application for Writ of Habeas Corpus**         .

       (3) Grounds Raised:

a.      The State's failure to disclose, upon request, favorable evidence of applicant's intoxication at the time of his arrest and interrogation violated applicant's rights under the Due Process Clause under the Fourteenth Amendment to the United States Constitution and Art. 1, Section 10 of the Texas Constitution.

b.      The State's failure to disclose favorable and material information in their files, or at their disposal, violated applicant's rights to Due Process under the Fourteenth Amendment to the United States Constitution and Art. 1, Section 10 of the Texas Constitution.

c.      The admission of applicant's written statement violated applicant's rights to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Art. 1, Section 10 of the Texas Constitution, because applicant was intoxicated at the time the written statement was taken.

d.      Applicant's rights to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Art. 1, Section 10 of the Texas Constitution were violated when the State's witness testified to a fact known to be untrue.

e.      Applicant was denied the right to effective assistance of Counsel in violation of the Sixth Amendment to the United States Constitution when trial counsel failed to adequately investigate and present all mitigating evidence.

f.      Applicant was denied the right to effective assistance of Counsel in violation of the Sixth Amendment to the United States Constitution when trial counsel failed to fully investigate and present evidence in support of the suppression of applicant's written statement or in objection to the admission of this statement.

g.      Applicant was denied the right to effective assistance of Counsel in violation of the Sixth Amendment to the United States Constitution when trial and/or counsel failed to request a copy of a psychiatric report, object to the failure to provide applicant a copy of such report or to make the sealed report a part of the appellate record.

h.      Applicant was denied the right to effective assistance of Counsel in violation of the Sixth Amendment to the United States Constitution when trial counsel failed to

raise in timely and specific manner, a request for the appointment of a psychiatric expert to assist in the defense of this case and to present testimony.

i.    Applicant's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution were violated by the trial judge's failure to define "life sentence" and/or the failure to instruct the jury that, if sentenced to life in the Texas penitentiary, applicant must serve 35 years before he would be eligible for parole.

(4) Did you receive an evidentiary hearing on your petition, application or motion?

Yes ___        No **X**

(5) Result  **Order Denying Relief**                                                         .

(6) Date of Result **February 10, 1999**                                                    .

b.  As to any second petition, application or motion, give the same information:

(1) Name of Court_____**n/a**_____.
(2) Nature of Proceeding _____.
(3) Grounds Raised:
(4)  Did you receive an evidentiary hearing on your petition, application or motion?
      Yes ___        No ___
(5) Result _____.
(6) Date of Result _____.

c.  As to any third petition, application or motion, give the same information:

(1) Name of Court_____**n/a**_____.
(2) Nature of Proceeding _____.
(3) Grounds Raised:
(4)  Did you receive an evidentiary hearing on your petition, application or motion?
      Yes ___        No ___
(5) Result _____.
(6) Date of Result _____.

d. Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

    (1) First petition, etc.       Yes **X**      No ___

    (2) Second petition etc.      Yes ___     No ___

    (3) Third petition etc.       Yes ___     No ___

e. If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

                              **n/a**

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

    Caution: In order to proceed in the federal court, you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

    For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state *court remedies with respect to them. However,* you should raise in this petition all available grounds (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

    Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

        (a)     Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
        (b)     Conviction obtained by use of coerced confession.
        (c)     Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
        (d)     Conviction obtained by use of evidence obtained pursuant to unlawful arrest.
        (e)     Conviction obtained by a violation of the privilege against self-incrimination.

(f)     Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g)     Conviction obtained by a violation of the protection against double jeopardy.

(h)     Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i)     Denial of effective assistance of counsel

(j)     Denial of right of appeal.

A.     Ground one: **The prosecutors' failure to disclose, upon request, favorable evidence of petitioner's intoxication at the time of his arrest and interrogation violated petitioner's rights to Due Process under the Fourteenth Amendment to the United States Constitution.**

B.     Ground two: **The prosecutors' failure to disclose favorable and material information in their files, or at their disposal, violated petitioner's rights to Due Process under the Fourteenth Amendment to the United States Constitution.**

**Supporting Facts**: Petitioner timely requested discovery of all favorable evidence in the possession of or at the State's disposal. The trial judge granted this request. A jailer who was employed by the Randall County Jail has provided information, through petitioner's counsel, that petitioner was obviously intoxicated at the time he was booked into the jail.[2] Petitioner was booked into the jail shortly after his confession to capital murder. Petitioner appeared to be under the influence of a controlled substance, had a silly grin on his face was not oriented to his surroundings. He had to be awakened several times during the book in interview. Petitioner's responses indicated his belief that his girlfriend (the victim) was alive. When the jailer attempted to discuss these matters with other law enforcement officers, she was instructed "You don't say that."

---

[2]     This jailer, Cindy Risley, provided this information to Ms. Lisa Milstein and to Gary Taylor, petitioner's counsel. Ms. Risley was profoundly afraid of the effect of her statements on her employment with the Randall County Sheriff's Department. A written statement was prepared for Ms. Risley and changes to this statement were made upon her request. However, Ms. Risley did not execute the statement and would not return telephone calls. Ms. Risley later stated that, somehow, her statements to counsel had become known. Attached hereto is the statement which was prepared and amended at Ms. Risley's direction, and written statements by Milstein and Taylor, all of which are incorporated by reference as if fully copied and set forth at length.

Petitioner would respectfully show this Court that he reasonably believes Risley would provide consistent testimony at any hearing or deposition in this matter.

The jailer will further testify to her belief that petitioner had a severe addiction to drugs. Based upon her extensive contact with petitioner between his arrest and trial, the jailer believed petitioner was not a dangerous person and would not commit future violent acts, or be a continuing danger to society if sentenced to life.

Within the prosecutor's files in this case, there exists a memorandum reflecting a telephone interview with Ron Kelley.[3] Kelley was the education officer at the Brownfield Treatment Center during petitioner's stay at the facility. During his interview by prosecutors, Mr. Kelley stated he met petitioner in 1991 and helped petitioner obtain a General Equivalency Diploma. Petitioner progressed faster than any other student. Kelley stated petitioner's mother was an alcoholic and so was petitioner. Petitioner came from an abusive background and Kelley believed petitioner was severely addicted to cocaine. Kelley could not imagine that petitioner could have committed the instant crime except on drugs. Kelley stated that in such situations, petitioner "lacks the ability to tell the difference between right and wrong."

This evidence was in the possession of the State and was not provided to petitioner. The evidence is favorable to petitioner. Such evidence questions the voluntariness of the written statement, is relevant to the probability petitioner would commit future acts of violence so as to be a continuing threat to society, raises an issue of temporary insanity or voluntary intoxication, and were probative of the most important defense petitioner put forth at the punishment trial—that he was addicted to cocaine. Moreover, the evidence is material in that its suppression questions the ultimate fairness of petitioner's trial. Thus petitioner was denied the ability to challenge the voluntariness of his confession, and was denied probative evidence relevant to the two statutory punishment issues the jury was to decide–future dangerousness and mitigation.

Petitioner would respectfully show this Court that the state proceedings did not include an evidentiary hearing and no judge assessed the credibility of the evidence provided herein, based upon an actual evaluation of the testimony of Ms. Milstein, Ms. Risley or Mr. Kelley. Without the benefit of a full hearing, petitioner was denied the ability to present Ms. Risley's testimony–because of her fear associated with her employment with one of the law enforcement agencies under the direction of the office which initially prosecuted petitioner and opposed petitioner's state application for writ of habeas corpus. Thus, petitioner was denied a full and fair adjudication of these claims in the state habeas proceedings and such findings are not entitled to deference.

---

[3]     A true and correct copy of this memorandum is being filed simultaneously with this petition and petitioner incorporates the arguments therein stated.

C.    Ground Three: **The admission of petitioner's written statement violated petitioner's rights under the Fifth and Fourteenth Amendments to the United States Constitution because petitioner was intoxicated at the time the written statement was taken.**

D.    Ground Four: **Petitioner's rights to Due Process under the Fourteenth Amendment to the United States Constitution were violated when the State presented evidence at trial, or a theory at trial, which was untrue.**

**Supporting Facts**: Shortly after he gave his written statement, petitioner was booked into the Randall County Jail. The jailer who booked petitioner into the jail stated petitioner was disoriented and incoherent.[4] In the jailer's opinion petitioner was intoxicated and likely under the influence of a controlled substance. When the jailer informed another law enforcement officer that petitioner was "stoned out of his mind," she was instructed, "You don't say that." The State never disclosed petitioner's intoxication or the jailer's evidence to the defense.

As a result of his intoxication, petitioner could not have knowingly, intelligently, or voluntarily waived any of his constitutional rights, with a full understanding and appreciation of the consequences, at the time the statement was taken. The evidence to be provided by the jailer questions the truthfulness of Detective White's testimony that petitioner voluntarily waived his rights and voluntarily confessed to the offense. This statement was not an unfettered exercise of petitioner's own free will. Petitioner's intoxication demonstrates petitioner was obviously lacking in mental capacity and free will. Such renders his written statement involuntary and demonstrates that authorities took advantage of his drug induced state to extract a confession. Without such statement, it is unlikely that petitioner would have ever been convicted of capital murder.

Moreover, Detective White was a law enforcement officer under the direction or control of the Randall County District Attorney's Office. White clearly was in possession of the evidence of petitioner's intoxication. Such information directly contradicts the theories and evidence which the prosecution presented the jury. Therefore, petitioner contends the state, by

---

[4]    Again, petitioner specifically incorporates the statements prepared for Ms. Risley and counsel's statements, attached hereto and incorporated by reference as if fully copied and set forth at length. Petitioner further incorporates herein the factual allegations of grounds for review one and two, *supra*.

introducing White's testimony of the voluntariness of petitioner's statement, presented the jury a "false impression," or presented evidence at trial which it knew, or should have known was false.

The state court did not conduct an evidentiary hearing on these grounds for review. Again, the evaluation of these grounds for review are dependent upon Risley's testimony concerning petitioner's intoxicated state at the time he was booked into the Randall County jail. Because of Ms. Risley's employment with Randall County, petitioner would respectfully show this Court that it will only be through live testimony or by deposition that the credibility of such statements can be judged.

E.      Ground Five: **Petitioner was denied the right to effective assistance of counsel in violation of the Sixth Amendment to the United States constitution when trial counsel failed to adequately investigate and present all mitigating evidence.**

F.      Ground Six: **Petitioner was denied the right to effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution when trial counsel failed to fully investigate and present evidence in support of the suppression of petitioner's written statement or in objection to the admission of this statement.**

**Supporting Facts**: The statements made by the Ms. Risley, Randall County jailer, have been presented *supra*, and are incorporated herein. Ms. Risley had extensive contact with petitioner during the period of time between his arrest and his death sentence. She observed the effects of his intoxication and, as a result of her experience and extensive contact with petitioner, was in a position to form an opinion of the likelihood that petitioner would continue to commit acts of violence in the future so as to be a continuing threat to society. Risley found petitioner to be a good inmate who was severely addicted to drugs and believed petitioner was no threat to society and would not commit future crimes of violence if assessed a life sentence. Risley was never approached or interviewed by petitioner's attorneys.

Petitioner's attorneys were provided copies of petitioner's records from the Brownfield Center. Within those records are several notations which indicate petitioner was approved for furlough with an individual

named Virginia Stuart.[5]  Stuart worked part-time at the Brownfield Treatment Center teaching adult education.  She took an interest in petitioner and petitioner was allowed to visit in her home, sometimes over a weekend.  Stuart's testimony would have presented an impression of petitioner that the jury never saw.  Stuart states petitioner was polite, congenial and very helpful.  He called her "Mom" and sent her Mother's Day Cards.

Stuart, through this close relationship, was familiar with petitioner's family life and childhood.  She described petitioner's childhood as troubled and remembered that petitioner wished he could have a close relationship with his real mother.  His relationship with his step-father was not good.  Petitioner was a loving and caring individual striving for family interaction where there was none.

Stuart is firm in her belief that petitioner could not have committed this murder unless he was using drugs.  When she heard that petitioner was arrested for capital murder, she found it very hard to believe.  Stuart never witnessed petitioner commit a violent act.  From her relationship with petitioner, and her knowledge of petitioner's performance at the Treatment Center, Stuart believes petitioner would do well in a structured environment.  Stuart was never contacted by petitioner's trial counsel.

Jeane Roper (now Jeane Autry) testified during the punishment phase of petitioner's trial.[6]  Autry was petitioner's probation officer from Gray County and worked closely with him for well over a year.  Autry was never contacted by petitioner's attorneys and, for the purposes of this argument, it is what Autry could have testified to which is relevant.

Autry states petitioner has a severe alcohol and substance abuse problem.  She identified this problem and attempted to assist petitioner in overcoming his addiction.  She placed petitioner in several facilities; some were structured, but some were not.  Petitioner did well in structured facilities, but relapsed in facilities which were not.  When petitioner had access to the "real world" his alcohol and substance addictions seemed to control him.  As Autry states, "when [petitioner] is on drugs, nothing else

---

[5]    The written statement by Ms. Stuart is attached hereto and incorporated by reference as if fully copied and set forth at length.

[6]    The written statement by Ms. Autry is attached hereto and incorporated by reference as if fully copied and set forth at length.

matters." Throughout this process, Autry kept in close contact with petitioner and they had a good relationship.

Autry describes petitioner's home as a "very poor environment." Petitioner's family members had alcohol abuse problems and there was physical abuse in petitioner's home.

It is relevant that the only information Autry is aware of concerning violent acts committed by petitioner is the instant offense. And she attributes this offense solely to petitioner's alcohol and substance abuse. In her opinion, if petitioner had received a life sentence in prison (i.e. in a structured environment), there was little probability he would commit another violent act or be a danger to anyone.

Ron Kelley is the witness who was interviewed by the State, but never disclosed to petitioner's attorneys.[7] However, Kelley was the education officer at the Brownfield Treatment Center and his name appears within those records. Kelley has been a teacher, counselor, school administrator and pastor. While petitioner was at the Brownfield Treatment Center, he and Kelley developed a close relationship. They became friends and saw each other often outside of educational activities. On a few occasions, they visited outside of the Treatment Center.

Kelley states petitioner had a severe alcohol and drug addiction. Alcohol and drugs provided petitioner a way to escape. A way to escape a dysfunctional and abusive family. A way to escape the physical abuse by his step-father put upon petitioner or his mother. A way to escape the verbal abuse. That is, being called a "F_____ Mexican" by his step father. So drugs and alcohol became a central focus in petitioner's life. When using drugs or alcohol, petitioner was aware of nothing else. Indeed, Kelley states, "[w]ith drugs and alcohol, or in search of drugs or alcohol, [petitioner] could not distinguish between right or wrong." In these situations, petitioner loses the ability to control himself.

This did not mean that petitioner had no capacity for good. Within a structured facility, where petitioner was not associated with the outside world, petitioner did well. Petitioner could not handle the pressures in the outside world. But in a structured environment, such as prison, Kelley believes petitioner is no threat to anyone and would not commit future crimes of violence.

---

[7]     The written statement by Mr. Kelley is attached hereto and incorporated by reference as if fully copied and set forth at length.

Trial counsel pursued a consistent theory throughout trial which emphasized that petitioner was addicted to drugs. However, the majority of the witnesses relied upon by counsel were State's witnesses. Indeed, outside of petitioner's written statement and the testimony of his mother, counsel sought to establish the drug addiction theory through the testimony of the following State's witnesses: Calvin Hurd, Gloria Berry, John Ballard, John Luzner and Jean Roper. Hurd, Berry and Ballard had no real relationship with petitioner– they recently met him. Luzner was petitioner's employer for approximately five or six weeks. And counsel did not interview Roper (Autry)– they failed to elicit much of the important and relevant information which Roper would have testified to.

During the punishment phase of the trial, counsel presented testimony from William Schlitz and Thomas Hale, both well qualified and persuasive witnesses concerning alcohol or drug addiction. However, neither witness knew petitioner, nor could they offer any evidence concerning whether petitioner was addicted, or the extent to which he was addicted. Neither witness could have testified to the extent to which drugs controlled petitioner.

Counsel further presented the testimony of petitioner's mother, Elsie Mae Titsworth. Mrs. Titsworth testified to petitioner's use of alcohol and drugs, and to petitioner's home life. However, it must be noted first that Mrs. Titsworth's testimony was to a large extent concerning herself and her troubles. Second, it must be noted that Mrs. Titsworth had not really associated with petitioner for more than a year and a half. Mrs. Titsworth was wholly unable to establish the extent of petitioner's addiction at the time of, or reasonably close to the time of the murder. Finally, it must be noted that, having been a part of petitioner's abusive and dysfunctional family life, Mrs. Titsworth was clearly lacking in her ability to describe its true effect on petitioner.

Therefore, trial counsel are to be commended for the expert testimony which they presented. However, this testimony was never related to petitioner and his addiction at the time of this offense. If this other evidence was discovered and presented, the jury would have been presented with a multitude of evidence which was mitigating to the extent that it justified a life sentence rather than death, and further, evidence which indicated petitioner would not commit future violent acts, or constitute a continuing threat in prison. Specifically, the jury would have learned petitioner committed no previous violent acts, and that several persons close to petitioner, who understood his addiction, were very concerned about the extent to which drugs had the ability to control him. In addition, the jury would have learned that in a structured facility,

whether it be prison, boot camp or a secure facility, petitioner did well and exhibited no problems. The jury would have learned that petitioner was under the influence of drugs from the time of the offense up to and including the time he was booked into the Randall County Jail. Finally, the jury would have learned that the very people the State called to testify did not feel there was a probability petitioner would commit a future act of violence or constitute a continuing threat to society if he received a life sentence.

Petitioner suffered harm in his attorneys' failure to investigate, discover and present the evidence herein. It must be noted that the jury returned a note to the trial judge in which "the presiding juror says the jury has voted three times on issue two, and cannot come to a decision on yes or know [sic]." (R. Vol. 16, 42). Issue two in the Court's Charge on Punishment asked the jury: "Do you find whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is sufficient mitigating circumstance or circumstances that a sentence of life imprisonment rather than a death sentence be imposed?" After being instructed to continue their deliberations, the jury later returned with a negative answer.

Harm is evident. The existence of mitigating circumstances was of great importance to this jury. Additional evidence, a portion of which from the State's own witnesses, which would demonstrate not only the extreme effect drugs had upon petitioner, but his ability to make an extremely good adjustment in controlled environment, was information highly relevant to the jury's continued deliberations on this issue. Such evidence is not simply evidence of good behavior in the County jail. Instead it includes the observations by several professionals of petitioner's ability to conform his conduct in several different and controlled environments. And such evidence did not address drug addiction and alcoholism in the abstract—it directly evaluated petitioner's addiction and alcoholism and was based upon an extended period of time observing petitioner in different environments.

The state judge's findings herein were not based upon an evidentiary hearing and the state judge did not have the opportunity to determine the quality of such evidence or the reliability, credibility, or trustworthiness of the witnesses.

G.   Ground Seven: **Petitioner was denied the right to effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution when trial counsel, and/or appellate counsel, failed to request a copy of a psychiatric report, object to the failure to prove petitioner a copy of such report, or to make the sealed report a part of the appellate record.**

**Supporting Facts:**    Prior to trial, and without notice to trial counsel, the trial judge ordered petitioner transported to the offices of Dr. Preston Shaw for a determination of competency, mental illness, and insanity. The trial judge further ordered that Dr. Shaw be provided all medical reports, mental health records, offense reports and the court's file. With no opportunity to consult with trial counsel, petitioner was transported from the Randall County Jail to Lubbock to see Dr. Shaw. Dr. Shaw's report was received by the Court and ordered sealed.[8]

On appeal petitioner contended the trial judge erred in sealing and refusing to release Dr. Shaw's written report. *Titsworth v. State*, Tex.Cr.App. No. 71,804, not published, slip op. pg. 15. In support of his argument petitioner contended he was entitled to a copy of this report under Tex. Code Crim. Proc. arts.36.02 (3)(d) and 46.03 (3)(d). The Texas Court of Criminal Appeals did not address petitioner's contention. Instead the Court found that counsel failed to request a copy of the report, object to the trial judge's failure to provide the report, or to make an attempt to include this report within the record before the Court. *Id.*, slip. op. pg. 16.

Within his various reports, Dr. Shaw determined petitioner was sane and competent to stand trial. However, Dr. Shaw's clinical interview reveals that petitioner "had been on a spree for at least several days up to the time he was put in jail on multiple drugs and alcohol including cocaine, LSD, and possibly others." The clinical notes further reveal petitioner "has some memory loss and confusion and doesn't remember having been a participant in the incident in question."

In another portion of the report, Dr. Shaw provides even more revealing information:

... All the offense reports and the information I have studied, and those sources have been listed in the reports, indicate *his behavior was compatible with what information I have in that this individual apparently was under the influence of alcohol and drugs including cocaine and perhaps others* with, as he reports

---

[8]    A copy of Dr. Shaw's report is attached hereto and incorporated by reference as if fully copied and set forth at length.

to me, a lack of memory for the specifics of the incident of which he is alleged. He says, "I don't remember doing it, and I don't think I did it." He related, however, that he had been off approximately a week from his roofing job because of having fallen and hurt, I believe, a rib and that he *had been hitting the drugs and alcohol pretty heavily during that period of time leading up to the time of the alleged incident.* Mr. Titsworth stated directly that *when he was arrested that he was so high on crack cocaine that he "didn't know what to say."* He remembers after the arrest being taken into custody in Potter County, but he believes he gave a statement and they took his fingerprints, palm prints, hair samples, picture of his tatoos and scars and brought a doctor in to take blood from him. He remembers being taken to a special crime unit in Amarillo and then later transferred to Randall County jail in Canyon.

(Letter to Judge Kaiser dated August 12, 1993). Dr. Shaw notes that petitioner was, at the time of the interview receiving medication for anxiety, depression and trouble sleeping. Dr. Shaw further noted petitioner was remorseful and concerned.

Counsel's failure to request a copy of Dr. Shaw's reports falls below that representation expected of a criminal defense attorney in a capital case. Had such a request been made counsel would have been entitled to Dr. Shaw's reports. With such reports, counsel would have evidence which supported the defensive theories at trial, evidence which supported Risley's statements, evidence to support petitioner's intoxication and addiction at the time of the offense, and evidence which demonstrated a possible "blackout" as suggested by the expert testimony tendered by counsel.

This error was harmful and questions the jury's punishment verdict. As is argued *supra*, the jury was deadlocked on whether the mitigating evidence in this case warranted a sentence of life rather than death. Had the jury been aware of Dr. Shaw's opinions, which provided great support for the expert testimony offered by petitioner, it is probable the jury would have found the mitigating evidence sufficient to justify the imposition of a life sentence. In other words, on a close issue the jury was denied that extra evidence which would have tipped the scales in favor of petitioner's life. Clearly, such an error questions the fundamental fairness of petitioner's trial.

H.      Ground Eight: **Petitioner was denied the right to effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution when trial counsel failed to raise in a timely and specific manner, a request for the appointment of a psychiatric expert to assist in the defense of this case and to present testimony.**

**Supporting Facts**: On appeal, petitioner contended his rights under the Fourteenth Amendment to the United States and *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087 (1985), were violated by the trial judge's denial of a request for funds to retain a psychiatric expert. *Titsworth*, slip op. pg. 17. The Court held counsel "made no timely pre-trial showing that he intended to raise temporary insanity by reason of voluntary intoxication or that his voluntary intoxication rendered him unable to appreciate the wrongfulness of his conduct when he committed the offense."[9] *Ibid.*

As has been shown *supra*, the central focus of the petitioner's defense at trial was petitioner's drug addiction and the drugged state of mind at the time of the offense. While counsel proffered some evidence to support this defense, petitioner has demonstrated there was extensive evidence which could have been presented. The evidence presented by counsel and their request for the appointment of an expert demonstrate counsels' recognition of the need for the assistance of a psychiatric or psychological expert. The testimony of a psychiatric professional could well have aided the jury in its determination. Counsel had two routes available to acquire this type of evidence. One, as argued in ground for review seven, would have been to request and obtain a copy of Dr. Shaw's psychiatric report. Dr. Shaw's statements within this report, and presumably his potential testimony, provides great support for petitioner's defense. Another avenue to obtain such evidence is to retain such an expert. This was the route chosen by counsel. However, petitioner was indigent and counsel was not automatically entitled to the appointment of a psychiatrist to assist them. Instead, in requesting the approval of such funds, counsel has a burden to make a preliminary showing that his intoxication or drug addiction would be a significant factor at his trial. *Ake*, 470 U.S. at 74, 105 S.Ct. at 1092. The Texas Court of Criminal Appeals found counsel fell in this burden. Because counsel did not

---

[9]     The Court further faulted counsel for failing to request a hearing on his motion; for failing to request a copy of the "sealed court-ordered psychiatric report"; and for failing to make the court-ordered report a part of the appellate record.

accomplish this burden, the Court held petitioner was not entitled to such funds.

There can be no doubt that petitioner's drugged state was the central focus of petitioner's defense. Indeed, it was really the only defense proffered. And, of all the statements by witnesses alleged herein, or to be attached to the completed petition for writ of habeas corpus, each and every witness had knowledge relative to petitioner's drug addiction at or near the time of the offense. It was this evidence which had to be used to convince petitioner's jury that a death sentence was inappropriate or that there was no probability petitioner would continue to commit violent acts so as to be a future danger. And, it was this evidence which caused the jury to deadlock on the mitigation issue. Petitioner argues *supra* the importance of Dr. Shaw's opinions and testimony. The only possible substitute for Dr. Shaw's evidence is the testimony of a similar expert.

Petitioner would show the Court that, having chosen not to request a copy of Dr. Shaw's report, and choosing instead to seek such evidence through the appointment of a psychiatric or psychological expert, counsel had the burden to comply with the constitutional requirements associated with such an appointment. The addiction and intoxication theories were the only defense offered at trial and the only theories reasonably available to petitioner. Having failed to properly plead and demonstrate the need for expert assistance relative to these theories, counsel failed to provide that assistance of counsel which is constitutionally expected of a defense attorney in a capital murder trial. And harm has been shown.

I.   Ground Nine: **Petitioner's rights under the Due Process Clause of the Fourteenth Amendment to United States Constitution were violated by the trial judge's failure to define "life sentence" and/or the failure to instruct the jury that, if sentenced to life in the Texas penitentiary, petitioner must serve thirty-five years incarceration before he would be eligible for parole.**

**Supporting Facts**:   In his instructions in the Court's Charge on Punishment, the trial judge instructed the jury as follows:

During your deliberations you will not consider or discuss any possible action of the Texas Department of Criminal Justice-Pardons and Paroles Division or the governor; nor shall you consider or discuss how long a defendant would be required to serve on a sentence of life imprisonment.

The jury was further instructed:

> During your deliberations in this case, you must not consider,
> discuss, or relate any matters not in evidence before you.
> You should not consider or mention any personal knowledge
> or information you may have about any fact or person
> connected with this case which is not shown by the evidence.

Therefore, the jury received no instructions from the trial judge concerning how long petitioner would be required to serve in prison before parole, should the jury answer the statutory punishment issues in such a way that a life sentence in prison was assessed.

In the instant case there is a likelihood that the jury was frustrated or confused on the issue of parole. During voir dire, many of the jurors were directly informed by either the State or trial counsel that Texas had a mandatory requirement that defendants, convicted of capital murder and sentenced to life, serve a minimum of thirty-five years before parole. However, not every juror seated in this case was provided this information. Therefore, it is probable that this jury, like most others, had inconsistent and inaccurate information before it concerning parole. Even if some of the members of petitioner's jury understood that petitioner must serve at least thirty-five years before parole on a life sentence, we know that at least Juror Padilla and Juror Shah did not. And we must presume the jury followed the instructions provided by the trial judge. They did not discuss or address either parole, or counsels' statements during voir dire (such would be facts outside of the evidence). Thus, in petitioner's trial, as in other Texas trials, the jury was actually more likely to render a death sentence, simply because they did not understand, and had not been instructed, on the laws of parole.

The record does not reveal an objection to the failure of the Court's charge to instruct the jury on the laws of parole in Texas. However, petitioner would respectfully show the Texas "contemporaneous objection rule," *see generally, Ex parte Chambers*, 688 S.W.2d 483, 486 (Tex.Cr.App. 1984) (Campbell, J., concurring), is inapplicable to the instant case. When an objection concerns a "right not recognized," or would be "futile," a contemporaneous objection is unnecessary. *Ibid.*

J.      Ground Ten: **The trial judge's order sealing a relevant psychiatric report, and refusing to release such a report to petitioner, violated petitioner's rights to effective assistance of counsel, to confront those witnesses against him, and Due Process under the Sixth and Fourteenth Amendments to the United States Constitution.**

**Supporting Facts**: This issue was presented to the Texas Court of Criminal Appeals on direct appeal. As is argued *supra*, the trial judge ordered a pre-trial psychiatric examination of petitioner's competency and sanity by Dr. Preston Shaw. The trial judge further ordered that all offense reports, medical records and mental health records be provided to Dr. Shaw. The trial judge further ordered all such records and Dr. Shaw's reports be sealed and returned to the Court.

Dr. Shaw completed this examination and prepared a report which was provided to the Court. The contents of this report have been discussed *supra*.[10] Dr. Shaw's observations and opinions demonstrated petitioner's addiction and alcoholism as well as suggested his intoxication at the time of the offense. The report questioned the accuracy of petitioner's written statement because petitioner was unable to recall the majority of the details concerning the offense. The report further suggests and lends support to petitioner's expert testimony concerning a drug-induced "black out." The report was sealed and defense counsel were not allowed access to this report. Therefore, the trial judge was in possession of relevant evidence which could have assisted the jury in their determination of the statutory punishment issues. And the trial judge specifically and intentionally prevented the jury from considering such evidence.

Again, the evidence provided by Dr. Shaw's report was clearly relevant to the statutory punishment issue which allowed the jury to consider and give effect to mitigating evidence which might call for a sentence other than death. The mitigating evidence presented by petitioner demonstrated his addiction to cocaine, his alcoholism and abusive childhood. Such evidence was compelling. After consideration of such evidence, the jury was deadlocked on this statutory punishment issue. Dr. Shaw's report provides immediate support for petitioner's mitigating evidence and therefore could have provided that extra evidence to resolve the jury's consideration of the statutory punishment issue in petitioner's favor.

---

[10]     Such factual allegations supra, are incorporated by reference here as if fully copied and set forth at length.

Ground Eleven: **Petitioner's rights under the Fourteenth Amendment to United States Constitution were violated by the trial judge's failure to provide sufficient funds to retain a psychiatrist or forensic psychiatrist to assist in petitioner's defense.**

**Supporting Facts**: This issue was presented to the Texas Court of Criminal Appeals on direct appeal. Petitioner filed a written "Motion for Continuance and For Funds for Expert Assistance From a Psychiatrist and Forensic Psychiatrist. Within this motion petitioner contended he was in need of expert assistance from a psychiatrist or forensic psychiatrist and alleged that petitioner's mental condition would be a significant factor at both the guilt and punishment phases of the trial.

It must be remembered that petitioner's counsel had limited time available to prepare for trial after appointment. Moreover, the prosecuting attorneys in this case varied from an established open file policy for their office, and provided counsel no more information than that specifically ordered by the Court. Three weeks prior to trial the prosecutors filed notice they may call 174 witnesses. Petitioner was denied access to the psychiatric report prepared by the Court's psychiatrist, Dr. Shaw. Thus the Court provided petitioner's counsel only some four months to prepare for trial, denied counsel access to psychiatric evidence in the Court's possession, and petitioner's case was prosecuted differently than other cases in Randall County.

Petitioner would show this Court that the denial of funds to retain expert assistance in this case denied petitioner his rights under the Fourteenth Amendment. In this case not only was petitioner's indigence a factor which caused his defense to be inferior to that which would be provided a defendant with private funds, but the denial of such assistance in this case questions the verdict of the jury and the fundamental fairness of the proceeding.

An examination of the record in this case demonstrates the truthfulness of petitioner's statements in his motion. Petitioner's mental condition was a significant factor in the trial. Indeed, a great portion of both the prosecution and the defense centered upon petitioner's addiction to cocaine, his probable intoxication  It was this type of evidence which was relevant to the determination of both statutory punishment issues. It was this evidence which mitigated in favor of a life sentence.

13. If any of the grounds listed in section 12 were not previously presented in any other court, state or federal, state briefly what grounds were not so presented, and give your reasons for not presenting them.  **N/a**                                              .

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes ___      No **X**

15. Give the name and address, if known, of each attorney who represented in the following stages of the judgment attacked herein:

    (a)    At preliminary hearing:    **Seldon Hale; 310 West 6th Street, Amarillo, Texas 79101; Joe Marr Wilson**; 104 West Sixth, Suite 300, Amarillo, Texas 79101 .

    (b)    At arraignment and plea:    **Seldon Hale (supra); Joe Marr Wilson (supra)**.

    (c)    At trial:    **Seldon Hale (supra); Joe Marr Wilson (supra)**   .

    (d)    At sentencing: **Seldon Hale (supra); Joe Marr Wilson (supra)**   .

    (e)    On appeal:    **Seldon Hale (supra); Joe Marr (supra)**   .

    (f)    In any post-conviction proceeding:    **Gary Taylor**, P. O. Box 90212; Austin, Texas 78709; **Michael Charlton**,3200 Southwest Freeway, Suite 1120, Houston, Texas 77027   .

    (g)    On appeal from any adverse ruling in a post-conviction proceeding:_**same**_   .

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court at the same time?

Yes ___      No **X**

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes ___      No **X**

    (a)    If so, give the name and location of court which imposed sentence to be served in the future: _____.

    (b)    And give date and length of sentence to be served in the future: _____.

    (c)    Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

        Yes ___      No ___

WHEREFORE, petitioner prays that the Court grant petition or relief to which he may be entitled to in this proceeding.

GARY TAYLOR
Attorney at Law
P. O. Box 90212
Austin, Texas 78709
(512) 478-3900
(512) 478-5256 (facsimile)
State Bar No. 19691650

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing petition for writ of habeas corpus was served on the Texas Attorney General, either by hand delivery or by First class United States Mail, on this the Fifth day of April, 1999.

GARY TAYLOR

## Affidavit

State of Texas          *

County of Travis        *

Before me the undersigned official, personally appeared Gary Taylor, a person known to me, and, after being sworn upon his oath, Gary Taylor deposed and stated:

My name is Gary Taylor. I am an attorney licensed by the State of Texas and in this Court. I am the attorney of record for the petitioner, appointed by this Court. Further, I represented the petitioner in his state application for writ of habeas corpus. Because of the time limitations imposed on filing this petition for writ of habeas corpus, I am unable to transmit this petition to petitioner for his signature before filing. I have read the foregoing Petition for Writ of Habeas Corpus and said petition is true and correct from my investigation of this case, knowledge and belief.

Gary Taylor

Sworn to and signed before me on this the ⎨__ Day of _____, 1999.



Notary Public in and for
~~THE STATE OF TEXAS~~
my comm. exp:/_____

ALEXANDER LEE CALHOUN
NOTARY PUBLIC
State of Texas
Comm. Exp. 04-17-2001